THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANN THOMPSON (Impleaded), Defendant-Appellant.

(No. 53813;

First District—May 24, 1971.

Walter LaVon Pride, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James Sternik, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LYONS delivered the opinion of the court:

Ann Thompson was convicted, following a bench trial, of the offense of theft [Ill. Rev. Stat. 1965, ch. 38, par. 16—1]. Judgement was entered on the finding and she was sentenced to a term of not less than one nor more than two years in the Illinois State Reformatory at Dwight. On appeal she contends:

1) that the trial court erred in denying her motion to suppress physical evidence;

2) that the trial court erred in denying defendant's motion for a directed finding at the close of the State's case, renewed at the close of the entire case;

3) that the finding of guilty was contrary to the weight of the evidence;

4) that she was not proven guilty beyond a reasonable doubt;

5) that the existence of the corporation alleged to be the owner of articles stolen was not proven;

6) that venue was not proven;

7) that she was denied due process and equal protection of law by the trial court's actions with respect to the granting of a continuance on motion of the State;

8) that the trial court erred in admitting certain physical evidence;

9) that the court erred in allowing the State's Attorney to read other offenses allegedly committed by defendant into the record at the hearing on aggravation and mitigation.

At the hearing on the motion to suppress, Sergeant Frederick Stewart of the Skokie Police Department testified that on the afternoon of April 19, 1967, he was driving south on Niles Center Road in the suburb. He was on duty and was driving another officer to court. He received a radio communication indicating that three female Negroes in a black over green 1966 Ford were wanted in connection with a charge of shoplifting at Allan Star's store on Oakton Street. When last seen, the vehicle in which they were riding was proceeding westbound on Oakton, a street which intersects with Niles Center Road. Immediately after receiving the communication, the witness observed a car fitting the description given, including the description of the occupants and license number, traveling in a northerly direction on Niles Center Road. The witness turned on his mars light, reversed his direction of travel and pursued the vehicle.

The vehicle entered the southbound lane of Niles Center Road in an attempt to pass a funeral procession, then cut back through it in an effort to turn onto Main Street. Shortly thereafter Sergeant Stewart overtook it. The officer advised the occupants of his office and ordered them out of the car.

The officer who had been riding with the witness took up a position on the passenger side of the vehicle and stated to him that there were some dresses on the floor of the front seat. Officer Stewart observed them, then the other officer removed them from the vehicle.

Allan Star testified that on April 19, 1967, he was engaged in the business of selling ladies' apparel at retail at 4854 West Oakton in Skokie. He was in his store in the afternoon of that day and noticed the defendant in the stockroom, an area not open to the public. He requested that she leave the area and she complied, going into a fitting room adjacent to the stockroom area. The next time he saw the defendant she was sitting on a couch with two other women near the front of the store. He was standing at a counter on the opposite side of store and was informed by Annette Schoenbach, an employee, that certain merchandise was missing from the fitting room.

Star then approached the women and requested permission to inspect a grey bag which defendant was carrying. The request was denied and the three women started toward the front door. He renewed the request

which was again denied. The women left the store. Star then instructed an employee to call the police and keep the telephone line open. He followed the women and saw them enter a black over green 1966 Ford automobile. As he approached the vehicle, the woman in the passenger's side of the front seat reached into the glove compartment and made a statement that she was going to get a gun and kill him. He advanced no further, but noted the license number of the vehicle and ran into a nearby restaurant where he wrote it down on a piece of paper. He then returned to his store and relayed the information with respect to the description of the car and its occupants to the police. When he last saw it, the vehicle in which the women left the scene was westbound on Oakton.

The defendant testified that she had been in Allan Star's store on the date in question with two companions. A saleslady asked them to take a seat while she looked for a dress for them. While they were seated Mr. Star came up to them and asked them to wait. They decided that they did not want a dress and left. Mr. Star did not ask to look in a bag. Shortly thereafter they were stopped by a police officer who asked why they had been speeding and stated that he wanted to search their car. The officer ordered them from the car and removed some dresses from the front seat. Thereafter defendant and her companions were removed to the police station.

The testimony of Allan Star was substantially the same at the trial as at the hearing on the motion to suppress. In addition, at trial he identified State's exhibits one through three inclusive as garments which had been in the clothing store which he operated under a corporate form of organization. It appears from the record that each of the exhibits was unusual in character and thus susceptible to sight identification.

The testimony of Sergeant Stewart at trial was also substantially similar to that heard on the motion to suppress. He also identified the above mentioned exhibits as those garments which he observed on the floor of the car subsequent to its being stopped.

Detective Jack Pawelek testified with respect to his interrogation of defendant at the Skokie Police station. He advised her of her constitutional rights and thereafter she admitted orally to him that she had taken something from Mr. Star's store and suggested the entire matter could be taken care of by Mr. Star taking the merchandise back for resale and her paying for it.

Annette Schoenbach, an employee at the store, identified defendant as one of three women who she had waited on and who had been in the fitting room immediately prior to her having discovered the disappearance of certain merchandise from that room. She further testified that

after she confronted the three women concerning the missing merchandise and received no answer, she alerted Mr. Star to the situation. At the time she spoke to Mr. Star the women were leaving the store.

No witnesses were called by the defense.

■■ Defendant contends that the motion to suppress was improperly denied inasmuch as the garments introduced as State's exhibits one through three were the product of a search neither authorized by warrant nor conducted incident to a lawful arrest. Defendant argues that the evidence at the hearing on the motion clearly established that the sole purpose for the car having been stopped was for certain alleged traffic violations involving the manner in which the car was manipulated in and about a funeral procession. That being the case, the officer possessed no authority to search the vehicle, as probable cause for arrest was lacking.

Even if we were to assume that a true search of the car were conducted we could not accept defendant's conclusion that the evidence presented at the hearing on the motion clearly established that the commission of the traffic offenses was the sole precipitating factor in the stopping of the car. To reach such a conclusion requires one to totally disregard the testimony of Officer Stewart, a reliable witness, with respect to the receipt of the radio message and the time that the traffic offenses were committed. Under the circumstances, the radio message which he testified that he received, if his testimony is believed, clearly established probable cause for the arrest. That being the case, a search of the car for weapons and fruits of the crime was warranted.

Moreover, there was no evidence presented to establish that a search of the car took place. The testimony of the officer that the articles in question were lying on the floor of the front seat was uncontradicted and clearly established that such articles were in plain view, negating the possibility of their having been discovered by virtue of a search. We conclude that the denial of defendants' motion to suppress was not error.

Points two through four of appellant's brief are all addressed to the general issue of whether the evidence presented at trial was sufficient to establish her guilt beyond a reasonable doubt and therefore will be treated as one. In attacking the sufficiency of the State's case, defendant points to certain inconsistencies between the testimony of Allan Star and Annette Schoenbach with respect to how and by whom defendant and her companions were confronted in the store following the discovery that certain garments were missing. She also calls attention to the fact that there was no direct evidence of her having taken anything from the store and asserts that the garments found in the car cannot be

deemed to have been in her exclusive possession so that no presumption with respect to the act of theft arises.

We are not convinced that the minor discrepancies between the testimony of the witnesses Star and Schoebach, with respect to the confrontation in the store, are sufficient to reduce the quality of the State's case below that necessary to sustain the conviction. The evidence against the defendant was that she and her companions were in the store and that before they left certain merchandise which they had been looking at was discovered to be missing. The items were discovered in their car a short time thereafter. Moreover, Detective Pawelek testified to certain inculpatory statements made by the defendant during interrogation.

We specifically reject defendant's contention that she was not shown to be in exclusive possession of the merchandise. The evidence presented tended to establish a concert of action by defendant and her companions. Exclusive and unexplained possession of recently stolen articles such as will give rise to a presumption of guilt may be joint. *People v. Hyde* (1968), 97 Ill.App.2d 43, 239 N.E.2d 466.

The fifth and sixth points raised by defendant, that the existence of the alleged corporate owner of the merchandise was not proven and that venue was not established, require no further discussion than to note that they are unsupported by the record.

■■ Defendant also argues that she was denied due process of law when the trial court denied her motion for a continuance for the avowed purpose of seeking the presence of a witness, but later allowed a similar motion by the State to secure the same witness. Again the record does not support the defendant's allegation. Following the hearing on the motion to suppress, defendant made a motion for continuance to secure the presence of Annette Schoenbach as a witness. The court denied the motion indicating that the State should proceed with its side of the case and that should the State conclude with its proofs prior to the time that the witness had been secured, time would be allowed the defendant for the purpose of securing the witness. The State proceeded with its case and, after calling several witnesses, indicated to the court that only one witness remained to be called, the person previously indicated by the defense not to be present and available to testify. Following some discussion, it was agreed by the court, prosecutor, and counsel for the defense that the case would be continued for a period of two weeks. Thus the record indicates that the trial judge did all in his power to avoid prejudice on either side and that defendant, in fact, agreed to the continuance. Moreover, there has been no showing that defendant's cause was prejudiced by the continuance.

The eighth point raised by defendant in her brief is that the trial court erred in admitting the garments into evidence at trial absent evidence showing a chain of possession of the articles from the time of their seizure. The introduction into evidence of testimony establishing the possession of articles themselves to be offered in evidence is not *per se* a prerequisite to their admissibility, but rather constitutes a means of identification of the exhibit, which is such a precondition. Here the exhibits cannot be characterized as nondescript. Each was capable of of being identified upon sight and were so identified. Identification having been established in such manner, proof of a chain of possession was unnecessary to establish admissibility.

■■ The ninth and final point raised by defendant in her brief is that the trial court erred with respect to the material which he allowed to be read into the record on the hearing in aggravation and mitigation, apparently an F.B.I. sheet based on fingerprint identification and noting convictions for the commission of other offenses. The purpose of the hearing on aggravation and mitigation is to assist the trial court in reaching a determination on the proper sentence to be imposed. Strict adherence to the rules of evidence is therefore not required. (*People v. Helton* (1969), 106 Ill.App.2d 246, 245 N.E.2d 4.) We find no error in the conduct of the hearing.

Judgment affirmed.

BURKE, P. J., and GOLDBERG, J., concur.