THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HARRY HOUCK, Defendant-Appellant.

First District (5th Division)   No. 63194

Opinion filed June 17, 1977.

James J. Doherty, Public Defender, of Chicago (Jack L. Uretsky and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and William E. Spizzirri, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Following a jury trial defendant was found guilty of rape and sentenced to serve a term of 6 to 15 years. On appeal, he presents the following issues for review: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether he was denied a fair trial by certain evidentiary rulings; (3) whether prosecutorial misconduct denied him a fair trial; (4) whether he was denied due process of law by the State's suppression of exculpatory evidence; (5) whether the trial court committed reversible error by refusing to give a battery instruction; and (6) whether his sentence was excessive.

It appears that complainant, Lucy Fitzpatrick, left work at 11:30 p.m. and began to drive home. Sometime before midnight her vehicle stalled due to an overheated radiator. She accepted an offer of assistance from defendant and, in his vehicle, they proceeded westward along Route 72 in search of an open gas station to obtain water for her automobile's steaming radiator. Finding none, after a 20- to 40-minute search, defendant drove to a trailer court located next to a forest preserve along Route 72 where he obtained plastic containers which he filled with water from a nearby stream. Although their testimony conflicts concerning the routes taken to the trailer park and whether Lucy expressed a desire either to telephone her husband or to be driven home, they were in accord that up to the time defendant had filled the bottles, his behavior toward her was courteous and that he appeared conscientious in his efforts to assist her. Further, they are in agreement that an act of sexual intercourse occurred in defendant's car after he returned with the water; however, their testimony is substantially divergent regarding the circumstances surrounding this act.

Complainant testified that after placing the water containers in the back seat, defendant reached for her hand. When she recoiled and stated that she would rather walk, he announced that he would seduce her. In attempting to exit the car, she unlocked the passenger door 10 times, but defendant reset the lock on each occasion. She was then pulled into a horizontal position with her head toward the steering wheel. Meanwhile, she pleaded with him to let her go, reminding him that she was married. Defendant cupped her mouth, stifling any screams, and clenched his fist as if to hit her when she tried to bite him. He then threatened to use a knife, stating he would hurt her as he had someone else; but he did not produce a knife. When she tried to push him away, he began choking her with both hands and then put one hand over her mouth as he used the other to pull down her panties and pantyhose to her ankles. He lowered his own pants to his knees and began manipulating her vagina with his finger. He then penetrated her vagina with his penis and said, "I am Bad

Jerry." When she continued her struggle, he got angry and returned to the driver's seat, stating that she would not get away with such actions. He began to exit the park, using one hand on the steering wheel and the other alternately to hold her left arm and to lock the passenger door each time she attempted to escape. When defendant had to use both hands to execute a U-turn, she jumped from the moving car. In so doing, she fell and her purse dropped on the road.

Defendant, on the other hand, testified that when he returned to the automobile she was sitting in a slouched position in the seat, with her legs propped up in such a way that "he could see everything she had, just about." He suggested that they copulate and, when she agreed, he assisted her in disrobing and they made love for 20 minutes. After they had dressed, he drove out of the trailer park and, when he stopped to make a U-turn, she got out of the car, fell down, and then began to run. He estimated that they had been together for about an hour prior to the time of the intercourse.

It was complainant's testimony that after escaping from the car she ran screaming to the trailer park and knocked on the doors of several trailers before gaining any attention. In the fourth trailer, Ronald Finley turned on the lights and opened the door to her. She inquired whether there was a lady in the house and, once assured that a woman was present, she entered the trailer. She asked to use the telephone and insisted that Finley not touch her and also that he leave the door open. Finley testified that her hair was messed up, she appeared shaken, and he had difficulty in making sense of her conversation. She telephoned her husband at home to no avail and then called his place of business—where she spoke to David Brunner, a co-worker of her husband.

When Brunner testified, he said that he had difficulty understanding her but he did ascertain that she had trouble with her car and offered to drive her home. When he arrived at the trailer some 15 minutes later, she first came to him but then, without explanation, backed away. He noticed that she had been crying and that she spoke incoherently about her purse. She, Finley and Brunner entered the latter's car intending to find her car and push it off the road. As they passed the spot where her purse had fallen, Brunner saw articles scattered on the road and reached for her hand, but she demanded that he not touch her as she had just been raped. Finley corroborated the circumstances surrounding this exclamation, but he quoted her as saying, "I think I have been raped." They did not stop to pick up the purse or its contents but drove directly to a nearby restaurant, where Brunner telephoned the police.

Defendant testified that after complainant left his car, he had to leave the scene to clear the way for another motorist. He did, however, return to the park but could not find her. When he arrived home, he told his wife

that he had assisted a woman motorist and that she had jumped out of his car.

After Brunner's phone call, several police vehicles, an ambulance, and complainant's husband soon arrived at the restaurant. The latter and one of the officers testified to her shaken and excited condition at this time. She told the police that she did not wish to be taken to the closest hospital—which was her place of employment, because of the embarrassment. A police sergeant purportedly directed that she be transported to a more distant hospital.

At the hospital, she first examined herself and observed some bleeding from the vagina. A doctor who had examined her testified that he observed redness of her neck, knuckles, and the skin close to the vagina. He also found a two to three millimeter laceration located three centimeters inside of the vagina, which could have been caused by severe pressure such as that produced by forcibly inserting a penis into the vagina. Although he did not notice any bleeding, the doctor said that the laceration was recent in origin and that any blood may have disappeared through the passage of time or could have been wiped away. He also discovered a brownish-yellowish secretion which, in his opinion, could have included old blood cells—meaning cells which were more than an hour or so old. Notwithstanding the fact that her blood pressure was within the normal range for her age and that she appeared alert and coherent, the doctor prescribed valium to help relax her. On cross-examination, he referred to the marks on her neck as bruises. Complainant, her husband, and Investigator Smith had simply described them as red marks or red compressions.

The investigation eventually centered around defendant and, four days later, he was asked to come to the police station where complainant identified him, after which he was charged with rape and read his constitutional rights. It was the testimony of Investigator Smith and defendant that he told the officer then that he could not have committed the offense, because he was in Michigan. He admitted that he did not tell the police at that time that he had consensual intercourse with complainant.

OPINION

■ We will first consider a contention of the State that our review is limited to the issues specified in defendant's oral motion for a new trial. An oral motion preserves all errors for review unless the State objects and requests that the grounds be specified as in a written motion. (*People v. Biers* (1976), 41 Ill. App. 3d 576, 353 N.E.2d 389.) The State relies upon *People v. Parker* (1970), 129 Ill. App. 2d 43, 262 N.E.2d 751, which in dictum stated that a request for the specification of grounds in an oral

motion will delimit the issues preserved for review to those actually enumerated. We think that such reliance is misplaced where, as here, the statement of the prosecutor purportedly requiring specificity in the motion does not in fact do so. The record discloses that he waived the requirement of a written motion, reserving the right to present arguments as to purported grounds for new trial. Defendant then stated four grounds for review, but the prosecutor said nothing. In the absence of some notice to defendant that the State was requesting the specificity of grounds required in a written motion, we do not believe the issues on review should be restricted. Thus, our review will not be limited by the parameters of the oral motion for a new trial.

■■ We turn then to defendant's first contention that the trial court erred in failing to direct a verdict in his favor at the close of all the evidence. He argues that the State failed to prove the existence of the essential element of force and, in any event, that he was not proved guilty beyond a reasonable doubt. It is his position that the act of intercourse was not accomplished against complainant's will and that the evidence supports a reasonable belief that her struggles were not seriously intended and also because, when questioned as to whether intercourse was consensual, she replied, "No. Yes, forced." We disagree. The facts and circumstances in each case must be considered in determining whether defendant intentionally had intercourse with complainant against her will (see *People v. Triplett* (1970), 46 Ill. 2d 109, 263 N.E.2d 24; *People v. Moore* (1966), 77 Ill. App. 2d 62, 222 N.E.2d 142), or whether complainant voluntarily submitted to the act of intercourse (*People v. Lee* (1968), 96 Ill. App. 2d 105, 238 N.E.2d 63). That the act was accomplished against a complainant's will may be established by evidence of the accused's use of force (*People v. Perez* (1952), 412 Ill. 425, 107 N.E.2d 749) as well as by resistance on the part of the complainant (*People v. Sims* (1972), 5 Ill. App. 3d 727, 283 N.E.2d 906). It is proper to consider the disparity in size and strength of the parties and the place and conditions under which the act took place in weighing the evidence of force (*Perez; Sims*), and there is no requirement that the woman resist where it would have been futile or where the result may have been serious physical harm (*Lee; Sims*).

■■ In the instant case, complainant's testimony describes a struggle between a five foot, 105 pound woman and a man of approximately six feet in height who weighed 170 to 175 pounds in a dark trailer park which was adjacent to a forest preserve. She testified that defendant pulled her toward him and repeatedly reset the car door's lock—frustrating her initial attempts at escape; that he held her down on the seat; that he choked her; that he threatened her with a clenched fist; that he claimed to have a knife; and that he assured her he would not hesitate to hurt her as he had done to another. Regarding her resistance, she further testified to

numerous attempts at escape, to pushing defendant away with her hands and knuckles, to kicking him, to attempts to scream and bite him, to tightening her muscles at the time of penetration, and to her actual escape by jumping from a moving vehicle while he momentarily left her unattended. A doctor testified to the reddened condition of her neck, knuckles, and the skin in the area of the vagina as well as to the swollen condition of the lips of the vagina and a laceration located within the vagina. Her husband and Investigator Smith also observed the red marks on her neck, and her husband also testified to the redness of her knuckles. He and Smith confirmed that Lucy's purse and its contents were scattered upon the roadway at the location where she testified she had escaped from defendant's car. Defendant, however, testified that complainant voluntarily remained in his car for an hour prior to intercourse; that she behaved in a seductive manner; that she voluntarily agreed to intercourse; that he used no force against her; and that, for no apparent reason, she exited his car while it was stopped.

Section 115—4(k) of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 115—4(k)) provides:

> "When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant."

Here, complainant and the witnesses who testified to her physical condition, if believed, reveal the use of repeated force. Therefore, we cannot say that the evidence was insufficient to support a verdict of guilty. Such evidence, of course, could indicate to the reasonable mind that intercourse was accomplished against complainant's will. (*Perez.*) We find no error in the refusal to direct a verdict in defendant's favor.

In his reply brief, defendant asserts that his testimony of consent stands uncontradicted because the State failed to call complainant in rebuttal to refute the voluntary and seductive conduct he attributed to her. He relies upon *People v. Housby* (1975), 33 Ill. App. 3d 762, 338 N.E.2d 461, which involved a prosecution for the delivery of a controlled substance. There, the State's evidence related solely to the actual sale of the substance between defendant and an I.B.I. agent. Defendant testified that the controlled matter belonged to a paid I.B.I. informant who had suggested defendant become involved in the sale as a means of obtaining rent money that informant owed him. Because the State failed to call the informant in rebuttal, the evidence of the affirmative defense of entrapment stood uncontradicted—necessitating a reversal of the

conviction. We find *Housby* distinguishable, as the instant case does not involve an affirmative defense as was the fact in *Housby*.

■■ When an affirmative defense is raised by the evidence of either party, the State must sustain the burden of proving defendant guilty beyond a reasonable doubt as to the issue involved in that defense together with all other elements of the offense. Section 3—2(b) of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 3—2(b).)

■■ Here, defendant's testimony of voluntary submission by a complainant was controvertive of the State's evidence on the issue of the use of force concerning which the State already had the burden of proving beyond a reasonable doubt. Under such circumstances, it could rely on the evidence it had already presented to sustain that burden. In view thereof, the State was not required to call the complainant in rebuttal, and we hold that its failure to do so does not necessitate reversal of the conviction.

■■ Concerning defendant's contention that he was not proved guilty beyond a resonable doubt, we note that the question of the weight to be given to the evidence was for the jury which saw and heard the witnesses and who was therefore in a superior position to ascertain which witness was worthy of belief (*People v. Neukom* (1959), 16 Ill. 2d 340, 158 N.E.2d 53; *Perez*), and the jury's determination will not be set aside unless the evidence is so unsatisfactory as to leave a reasonable doubt of guilt (*People v. Hood* (1974), 59 Ill. 2d 315, 319 N.E.2d 802). Furthermore, corroboration is unnecessary where the testimony of the complainant is clear and convincing. (*People v. Walden* (1960), 19 Ill. 2d 602, 169 N.E.2d 241.) Here, it appears that the jury believed complainant's testimony regarding force and resistance—portions of which we note were corroborated by the attending physician, her husband, and the investigating officer—rather than that given by defendant. Upon a review of the record, we cannot say that the totality of the evidence of force and resistance was so unsatisfactory as to leave a reasonable doubt that intercourse was accomplished against complainant's will. She testified that she resisted by attempting to escape—by pushing him away, by kicking him, by attempting to scream and bite him, and by tightening her muscles, and that defendant's use of force escalated from pulling and holding her to clenching his fist as if to strike a blow, to choking her by the throat, to proclaiming that he had a knife, and to his statement that he would hurt her as he had another in the past. Such escalation hardly comports with a reasonable belief that her resistance was not seriously intended, and the fact that she voluntarily accompanied defendant prior to the time his behavior became alarming does not militate against this conclusion. (*Sims.*) Moreover, as a further indication that she did not

voluntarily submit to intercourse, she responded to the question of whether she consented by stating, "No. Yes, forced." We find that her testimony regarding the use of force was not only clear and convincing but was also corroborated.

Another phase of defendant's contention that the required proof of guilt was lacking lies in his belief that his conviction was based upon the passion and prejudice of the jury, excited by both unsatisfactory evidence and prejudicial evidentiary rulings. In this regard, he calls our attention to aspects of complainant's testimony which he maintains established it as doubtful and improbable. We have given detailed consideration to this contention, and we conclude that these items either singly or in combination do not alter our opinion of the clear and convincing nature of her testimony.

In further support of his contention that he was not proved guilty of rape beyond a reasonable doubt, defendant relies upon *People v. DeFrates* (1965), 33 Ill. 2d 190, 210 N.E.2d 467, and *People v. Bolik* (1909), 241 Ill. 394, 89 N.E. 700. We find these cases inapposite, as they involve acts of intercourse between individuals with a history of business and/or social relationships where there were implausible explanations by the complainant regarding the absence of resistance. Here, the participants were strangers and, as we have stated above, the testimony of complainant was clear and convincing.

In the light of the foregoing, we conclude that the evidence does not leave a reasonable doubt as to defendant's guilt. *Perez; Sims.*

■■■ We next consider the evidentiary rulings of the trial court which defendant contends were erroneous and prejudicial. First, he argues that complainant's testimony that she had been raped was inadmissible because it followed a long and unexplained delay. A spontaneous exclamation is admissible in any proceeding as an exception to the hearsay rule if the following criteria is satisfied.

> "(1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence." (*People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804, 807.)

In cases of rape, however, complaints of the victims may be admitted as a corroborative statement although they are made too remotely to qualify as spontaneous declarations having been made after an opportunity for reflection and fabrication has intervened. (*People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25.) In *Damen*, the supreme court delineated the parameters within which corroborative statements are admissible.

> "It is clear from our decisions that there is no fixed or definite limit of time within which the complaint must be made [citation], but

that a complaint made without inconsistent or unexplained delay may properly be shown. [Citations.] It must have been spontaneous and not made as a result of a series of questions to which answers were given. [Citation.] Under this rule, as recognized by our prior decisions, only the fact of the complaint, and not the details thereof, may be admitted into evidence, and it is necessary, before such statement is admissible at all, that the complainant be a witness in the proceeding in which the statement is introduced. [Citations.] The reason for this is simply that since admissibility is for the purpose of rebutting the presumption arising from the silence of the complainant, it is unnecessary to show the details of the declaration, but only the fact of its making in order to negative the presumption arising from silence." (28 Ill. 2d 464, 473, 193 N.E.2d 25, 30.)

It has also been required that the charge be made as a declaration of injury or outrage rather than a mere recital of a past event. *People v. Davis* (1957), 10 Ill. 2d 430, 140 N.E.2d 675; *People v. Romano* (1923), 306 Ill. 502, 138 N.E. 169.

■■■ Delays have not been viewed as inconsistent or unexplained where: a complainant avoided making the charge to strangers encountered on the street, preferring the certainty of assistance from her own family (*Sims*); having been spurned in her first attempt at seeking aid, a complainant refused to answer the questions of those who finally rendered her aid out of fear of retaliation, began to cry, and upon attaining her composure made the charge (*Hood*); complainaint's mother observed an intruder in complainant's bedroom, left the room to seek the assistance of her husband, telephoned police, talked with complainant who was hysterical and nonresponsive to questioning, and was then told by her of the rape (*Davis*); a complainant told her mother that she was beaten, but as soon as her mother walked away she made an immediate charge of rape to a policeman (*People v. Armstrong* (1976), 43 Ill. App. 3d 586, 357 N.E.2d 84); and a complainant avoided telling the cab driver who drove her home, but within five minutes after her arrival she woke her mother and made the charge (*Perez*). The common thread which binds these divergent fact patterns is that during the delay the complainants were incoherent, fearful, hysterical, and/or emotional and, when they found a place or person lending them security, they made the charge as an outpouring of injury. Defendant relies on *People v. Taylor* (1971), 48 Ill. 2d 91, 268 N.E.2d 865, in which complainant's charge was held to be inadmissible because it was made after she was questioned three times. The supreme court in *Hood* interpreted its decision in *Taylor* thusly: "We opined that had the questions not been asked her statement would not have been made." 59 Ill. 2d 315, 326, 319 N.E.2d 802, 809.

In the instant case, complainant testified she was forcibly dealt with by defendant, who initially acted in a trustworthy manner and, after escaping by jumping from a moving automobile, she ran immediately to the closest sources of refuge where she appeared shaken and incoherent to the occupant, Finley, when he opened the door to her. She refused his assistance until assured that a woman was present and, when she was unable to contact her husband, spoke somewhat incoherently on the telephone to his co-worker, Brunner. She showed evidence of crying at the time Brunner arrived and again spoke incoherently, asking that both Finley and Brunner not touch her and, when actually touched by Brunner, reacted in an emotional outburst: "Don't touch me, I've just been raped." Under the circumstances, we do not believe the trial court erred in admitting her testimony that she had made a complaint of rape.

■■ Secondly, defendant argues that the trial court erred in admitting Lucy's torn coat into evidence because (1) the State failed to comply with discovery (Ill. Rev. Stat. 1975, ch. 110A, par. 412(a)(v)); (2) the State failed to prove a chain of custody; and (3) it was of minimal probative value as a coat may be torn during consensual as well as forcible intercourse. Where the State fails to furnish physical evidence in compliance with discovery, the admission of the evidence is within the sound discretion of the trial court (*People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126; *People v. Acevedo* (1976), 40 Ill. App. 3d 105, 351 N.E.2d 359), and its admission is not error absent a showing of prejudice or surprise (*People v. Raby* (1968), 40 Ill. 2d 392, 240 N.E.2d 595, *cert. denied*, 393 U.S. 1083; *Dees; People v. Longstreet* (1974), 23 Ill. App. 3d 874, 320 N.E.2d 529; *People v. Jones* (1973), 13 Ill. App. 3d 684, 301 N.E.2d 85), which is not shown where no continuance was sought to examine the evidence (*People v. Myers* (1974), 20 Ill. App. 3d 83, 312 N.E.2d 741; *Jones*).

■■ Here, although the State failed to specifically mention the jacket in its reply to defendant's request for discovery, it did offer the defense the opportunity to come in by appointment to examine "all other materials." There is no indication that this offer of an inspection opportunity, had it been acted upon, would not have included the jacket's revelation. Moreover, when the jacket was introduced, defendant did not claim surprise or seek a continuance but, rather, objected to its admittance on the ground that no chain of custody had been shown. "An objection to evidence, based upon a specific ground is a waiver of objection on all grounds not specified." (*People v. Washington* (1962), 23 Ill. 2d 546, 548, 179 N.E.2d 635, 637.) Thus, the admissibility of the jacket rises or falls upon the chain of custody issue and, in this regard, defendant relies on *People v. Brown* (1972), 3 Ill. App. 3d 879, 279 N.E.2d 382, for the proposition that proof of the chain of custody is a necessary

foundation to the admission of physical evidence not only for identification purposes but also to show an absence of tampering or substitution. The State, however, relies on *People v. Thompson* (1971), 133 Ill. App. 2d 184, 273 N.E.2d 30, which held that where exhibits are sufficiently unusual in character to be susceptible to sight identification, proof of a chain of custody is not necessarily a prerequisite to admission. We believe the rule was stated best in *People v. Rogers* (1976), 42 Ill. App. 3d 499, 356 N.E.2d 413, where it was held that in criminal cases physical evidence is erroneously admitted if not connected with both the crime and the accused, and even then such admission is not reversible error absent a showing of prejudice.

■■ Here, complainant and her husband identified the coat as the one that was worn on the night in question and that it was not torn prior to her confrontation with defendant but was in a torn condition thereafter. She further testified that it was torn during her struggle with defendant and that it was in the same condition at the time of trial as it had been immediately after the struggle. (*Perez.*) As defendant's third supporting ground belies any showing of prejudice and as it was not raised in the trial court, it requires no further comment.

■■ Defendant also argues that he was denied a fair trial by the admission of prejudicial evidence having no probative value. At the close of the State's case, six exhibits were admitted into evidence over defense objections. Defendant objected to the admission of complainant's jacket and purse on the ground that a chain of custody was not proved; to two photographs of her disabled car on the ground that they were not the best evidence and were immaterial; to a photograph of a lineup including defendant, on the ground that it was inflammatory, not the best evidence, and immaterial; and to a photograph of her purse and its contents lying on the roadway, on the ground that it was not the best evidence. As noted above, a proper foundation was laid for the admission of the jacket, and applying the same principles to the purse we find it was also properly admitted. Defendant relies upon his objections as to materiality concerning the other four exhibits. Specific evidentiary objections waive all grounds not specified (*Washington*), and as stated in *People v. Allen* (1959), 17 Ill. 2d 55; 63, 160 N.E.2d 818, 824:

> "The test of admissibility of evidence is whether it fairly tends to prove the particular offense charged and any circumstances may be put in evidence which tend to make the proposition at issue either more or less probable."

Defendant's position was that these exhibits were immaterial because the assertion of a consent defense limits matters at issue to force and resistance only. The State maintains that it is not so limited, as it has the burden upon the entry of a not guilty plea to prove every element of an

offense beyond a reasonable doubt. (*People v. Scheck* (1934), 356 Ill. 56, 190 N.E. 108; *People v. Munday* (1920), 293 Ill. 191, 127 N.E. 364.) Defendant relies upon *People v. Nickolopoulos* (1962), 25 Ill. 2d 451, 185 N.E.2d 209, and *Allen*, which we believe are inapposite and, as a matter of fact, are in harmony with the cases cited by the State, as the convictions were reversed because of the erroneous admission of evidence tending to prove elements which were not part of the crime charged. We believe that where there is a plea of not guilty, under circumstances such as existed here, the general rules as to relevance and materiality should control the admission of evidence rather than to apply a blanket limitation on the introduction of evidence, as defendant suggests here. In any event, it appears to us that the photograph of the contents of the purse scattered upon the road and the photographs of the car would be admissible, as the former tended to make her escape (a form of resistance) more probable and the latter were explanatory of her voluntary entry into the automobile of a stranger at so late an hour and thus indicated that consent was less probable.

Regarding the lineup photograph, we note defendant failed to object to any evidence concerning identity other than the lineup photograph and, since the transcript of proceedings reveals that defendant was identified prior to the lineup, we think the photograph itself has no tendency to make his identification more probable than not (see *People v. Stephens* (1974), 18 Ill. App. 3d 971, 310 N.E.2d 824), and therefore that the photograph should not have been admitted. However, the erroneous admission of evidence does not constitute reversible error unless a showing is made of resulting prejudice. *People v. Owens* (1970), 126 Ill. App. 2d 379, 261 N.E.2d 785.

■■ Defendant argues that prejudice occurred in the instant case by merely allowing the jury to view the photograph. We disagree. The photograph was not a mug shot, implying prior criminal activity, and there is nothing in the record to indicate that defendant was portrayed in a demeaning or otherwise unfair fashion. We conclude that the admission of the exhibits did not deny defendant a fair trial.

Next, defendant posits a denial of a fair trial by prosecutorial misconduct through the misstatement of evidence during closing argument and because of the repeated posing of improper questions during the cross-examination of defendant. We reject this contention, as our review of the record demonstrates that the State's closing argument taken as a whole did not misstate the evidence. Furthermore, although a few of the questions posed by the State were inartful and perhaps intemperate, they do not begin to approach the abusive and prejudicial conduct exhibited in the cases cited by defendant: *People v. Romero*

(1967), 36 Ill. 2d 315, 223 N.E.2d 121, and *People v. Hicks* (1971), 133 Ill. App. 2d 424, 273 N.E.2d 450.

Defendant also contends that the State's destruction of arguably exculpatory evidence requires an outright reversal of his conviction. We cannot agree. In *People v. Nichols* (1976), 63 Ill. 2d 443, 446, 349 N.E.2d 41, 42-43, the court stated:

> "In *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, it was held that a violation of due process occurs when a prosecutor, regardless of motive, suppresses evidence, material to the question of an accused's guilt or innocence, after there has been a request for its production. For there to have been a violation of the right of due process, it must be shown that the evidence was suppressed following a request for it by the defendant, that the evidence was favorable to the defendant, and that it was material."

See also *Moore v. Illinois* (1972), 408 U.S. 786, 794-95, 92 S. Ct. 2562, 2567-2568, 33 L. Ed. 2d 706, 713.

In the instant case, although complainant's undergarments were inexplicably destroyed prior to trial, the State did produce the favorable and material evidence, albeit in another form. At trial, it elicited testimony from complainant that her panties had not been torn during the course of her struggle with defendant and that there was a run in her pantyhose but she could not attribute it to the confrontation with defendant. In his reply brief, defendant has narrowed his contention, taking the position that the production of the panties without the presence of blood stains could possibly have impeached complainant's testimony of vaginal bleeding. However, since she testified to seeing blood only upon examining herself while in the hospital and made no mention that any blood was on this garment, its production would not impeach or controvert her testimony. Therefore, we conclude that defendant was not denied a fair trial by the State's failure to produce the undergarments.

Defendant also takes the position that the trial court committed reversible error by refusing his battery instruction. The Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 2—9) provides in pertinent part:

> " 'Included offense' means an offense which (a) is established by proof of the same or less than all of the facts * * * than that which is required to establish the commission of the offense charged * * *"

The offense of battery requires proof of intentionally or knowingly causing bodily harm or making insulting or provoking contact with another. (Ill. Rev. Stat. 1975, ch. 38, par. 12—3.) As an abstract principle, battery may be viewed as a lesser included offense of rape; however, where as here the evidence is that the act of intercourse was complete, a

jury may not be instructed as to a lesser included offense—for, if the jury believed that the act was forcible, it could return no other verdict than rape. (*People v. Lewis* (1911), 252 Ill. 281, 96 N.E. 1005; see also, *People v. Hatfield* (1972), 5 Ill. App. 3d 996, 284 N.E.2d 708.) To do otherwise would invite a compromise verdict. (*Lewis.*) Thus, we find that the battery instruction was properly denied.

■■ Defendant's final contention is that his sentence was excessive where only a minimum of force was employed. We disagree. The authority to reduce a sentence should be applied by a court of review with great circumspection and caution, as the trial court is in a superior position during the course of the trial and the hearing in aggravation and mitigation to make a sound determination regarding punishment. (*People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.) Where the sentence imposed is within legislative limitations, it will not be disturbed on review absent a great departure from the fundamental purpose and spirit of the law. (*Stephens.*) The Unified Code of Corrections calls for a four-year minimum sentence in cases of rape unless, in the trial court's consideration of the nature and circumstances of the offense together with the history and character of defendant, it is determined that a higher minimum sentence is appropriate. (Ill. Rev. Stat. 1975, ch. 38, par. 11—1, 1005—8—1(c)(2).) A court of review may look to the statement of the trial court at the time of sentencing as well as the record as a whole in evaluating the propriety of the imposition of a greater minimum sentence. *People v. Taylor* (1974), 25 Ill. App. 3d 396, 323 N.E.2d 388.

■■ Here, the trial court, in imposing a sentence of 6 to 15 years, addressed itself to defendant's conduct in lulling complainant into a false sense of security and then luring her to a secluded area away from the possible support and help of others, which the court felt bespoke both the nature of the offense and the character of defendant. Considering the totality of the circumstances, we cannot say that the sentence was excessive.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ, and MEJDA, JJ., concur.