**People of the State of Illinois, Appellee, v. Willie C. Jackson, Appellant.**

**Gen. No. 51,243.**

First District, First Division.

April 15, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Paul Bradley and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, James Zagel, and David B. Selig, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Willie C. Jackson, was tried before a judge sitting without a jury under a two-count indictment which charged him with rape and attempt rape. Defendant, after a trial, was found guilty of attempt rape, and after a hearing in aggravation and mitigation, was sentenced to a term of not less than ten nor more than fourteen years in the Illinois State Penitentiary. The defendant appeals from the judgment entered on the verdict. No questions are raised on the pleadings.

The defendant contends, on appeal, that (1) sufficient credible evidence was not introduced at trial identifying him as the perpetrator of the offense charged, and (2)

that the prosecutor introduced incompetent evidence in aggravation which resulted in the imposition of an excessive sentence upon him.

Mrs. Ruth Lanier, the prosecutrix, testified that on September 8, 1965, at about 9:00 or 9:30 p. m., she was in the basement of her apartment with her daughter washing clothes when a man entered the basement and asked directions as to how to get to Springfield. Mrs. Lanier told the man he was far out of his way. The man then started to approach Mrs. Lanier and her eleven-year-old daughter, Ruth Mae. He pulled a gun out of his pocket and Ruth Mae began to scream. The man told Mrs. Lanier that if she didn't stop her daughter from screaming he would kill the girl. He then forced Mrs. Lanier and her daughter into a closet in the basement, told Mrs. Lanier to come back out, and proceeded to lock Ruth Mae inside the closet, where the girl remained screaming throughout the entire incident. The man told Mrs. Lanier to lie down, and she complied with his request, lying down on her stomach. He then told her to turn over; he unzipped his pants, and got on top of Mrs. Lanier for about two minutes. "During the two minutes he inserted his penis into my vagina." Mrs. Lanier further testified that during the two minutes the man was on top of her she was able to observe his face, haircut, and clothes.

On direct examination, Mrs. Lanier testified that the man had achieved penetration; however, on cross-examination she admitted that she had told the police after the incident that she didn't think the man had been able to achieve penetration "because it didn't seem to be hard." A vaginal smear taken from Mrs. Lanier on the night of the incident revealed the presence of sperm. Mrs. Lanier further testified that on October 10, 1965, she had picked the man out of a six-man lineup at the Filmore Police Station; and she then proceeded to identify the defendant, in court, as the man who had been in her apartment on the night of September 8th, and as the man she had

identified in the lineup of October 10th. On cross-examination, Mrs. Lanier testified that she didn't see a scar on the defendant's forehead, although later testimony revealed that he did have one. On redirect she testified that she had told the police about her attacker's height, skin color, and the color of his shirt, pants, jacket and shoes. She also told the police about the weight of her attacker.

The testimony of Ruth Mae Lanier essentially corroborated her mother's version of what occurred on the night in question. She further testified that she had seen the man once before the night of the incident in the alley outside of her apartment. She then identified the defendant as the man who had been in the apartment on the night of September 8th, and further stated that she had recognized him in the lineup of October 10th.

Police Officer George Mays testified that he had arrested the defendant on October 9, 1965, and that the defendant was carrying a toy pistol in his coat at that time.

The defendant, testifying in his own defense, denied the entire incident. He stated that he did not leave his home at 1515 East 65th Place on the evening of September 8, 1965, until 10:00 or 10:15 p. m., at which time he left for work at the Princeton Plating Company, which is located in the 300 block of West 29th Street. He testified that he had been at home watching television on the night in question until he left for work. The defendant further testified that he had paid the rent at around 7:30 p. m. on September 8th, and a rent receipt tending to corroborate this testimony was introduced in evidence. A time card from the Princeton Plating Company, which showed the time at which the defendant reported for work, was also introduced in evidence.

The defendant's alibi was essentially corroborated by his wife, sister and brother, all of whom lived in the same building along with the defendant.

31

The defendant contends that the evidence as to his guilt is not sufficient because the testimony of Mrs. Lanier and her daughter is not credible, particularly in regard to the identification of the defendant as the perpetrator of the alleged act, whereas the defendant has denied his participation and his alibi has been supported by the uncontradicted testimony of three witnesses. He argues that identification, no matter how positive, will not prove guilt beyond a reasonable doubt when there is a sufficient alibi.

Any questions as to the credibility of the witnesses were for the resolution of the trial judge, and we will not interfere with his determinations in this regard. The fact that Mrs. Lanier failed to remember certain physical characteristics of her assailant does not, as a matter of law, render her identification of the defendant unworthy of belief; for, when an identification has been positively made, precise accuracy in the description is not necessary. People v. Miller, 30 Ill2d 110, 195 NE2d 694. Therefore, the failure of Mrs. Lanier to remember the fact that the defendant had a scar, while making her identification of him, does not create a reasonable doubt as to his guilt. The defendant was positively identified by Mrs. Lanier both in the police lineup and in court as the man who had entered her apartment, and this identification was corroborated by her daughter. Furthermore, the fact that the defendant produced an alibi, supported by three witnesses, which contradicted the testimony of Mrs. Lanier and her daughter, does not, in and of itself, constitute reasonable doubt as to his guilt. As we have pointed out, conflicts in the testimony were for the resolution of the trial judge, and he was not obliged to believe the alibi testimony of the defendant and his relatives over the positive identification of Mrs. Lanier and her daughter, even though the alibi testimony was given by a greater number of witnesses. People v. Setzke, 22 Ill2d 582, 177 NE2d 168.

The defendant cites the cases of People v. Ricili, 400 Ill 309, 79 NE2d 509, and People v. Gooden, 403 Ill 455, 86 NE2d 198. In Ricili the prosecutrix did not make a positive identification of her alleged assailant at a police lineup, and her testimony that the defendant had been the driver of the car in which she had been abducted was contradicted by positive testimony that he could not, and never did, drive a car. Furthermore, the court there concluded that other evidence adduced at trial, along with the weak identification of the defendant, raised a reasonable doubt as to his guilt. In the instant case, the prosecutrix made a positive identification of the defendant at the lineup, and he was also identified by her daughter. Nor are there other factors present in the record, as there were in Ricili, which raise a reasonable doubt of the defendant's guilt, and therefore, questions as to the identification and whereabouts of the defendant at the time of the crime are properly left for determination by the trial judge. In Gooden the identification of the defendant was uncorroborated, and his alibi was supported by three unrelated witnesses. However, in the case at bar, Mrs. Lanier's positive identification was corroborated by the testimony of her daughter, and the only support for the defendant's alibi was given by three of his relatives. We are convinced that the factual situation in Gooden is substantially dissimilar from the one presented in the instant case and we conclude, therefore, that the Gooden decision is not controlling here.

██ The defendant next contends that his sentence was excessive, apparently as the result of incompetent evidence introduced by the prosecutor at the hearing, in aggravation and mitigation, and he asks us, if we fail to reverse the cause, to reduce his sentence pursuant to Supreme Court Rule 615(b)(4). (Ill Rev Stats 1967, c 110A, par 615(b)(4).) Specifically, the defendant calls our attention to attempts by the prosecutor at the hearing in aggravation and mitigation, to introduce evidence of his

33

prior arrest record and various hearsay evidence. We have examined the record and it is evident that the trial judge did not consider the evidence complained of and was not misled by the remarks of the prosecutor in his determination of the sentence to be imposed. See People v. Grodkiewicz, 16 Ill2d 192, 157 NE2d 16. Furthermore, we conclude that the sentence imposed in the case at bar was justified under the circumstances, and the sentence being within the minimum and maximum limits fixed by the legislature for the particular offense, we will not interfere with the trial judge's determination in this regard. People v. Smith, 14 Ill2d 95, 150 NE2d 815.

Judgment affirmed.

ADESKO and MURPHY, JJ., concur.