THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL J. ALEXANDER, Defendant-Appellant.

(No. 56267; ▮▮▮▮▮▮▮▮)

First District (3rd Division)—May 3, 1973.

Cecil A. Partee, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane, John C. O'Rourke, Jr., and Mark T. Zubor, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant was charged with rape, burglary with intent to commit rape and burglary with intent to commit theft. After a jury trial, defendant was found guilty of rape and burglary with intent to commit rape, and was sentenced to concurrent terms of 10 to 15 years. Defendant was found not guilty of the charge of burglary with the intent to commit theft. On appeal defendant contends that the trial court erred in admitting his in-custodial responses as rebuttal evidence; that the court erred in admitting into evidence certain out-of-court statements of the complaining witness; that certain remarks of the prosecutor and actions of the trial judge deprived defendant of a fair trial; that he was not proved guilty beyond a reasonable doubt; and finally, that the sentences imposed were excessive.

At trial the victim testified that on September 16, 1970 defendant committed forcible intercourse with her in her ground floor apartment located in the City of Chicago. Earlier that evening, while a neighbor, Mrs. Patricia Longmire, was visiting, defendant had come to the victim's apartment looking for Philip O'Bannon, the victim's boyfriend. Defendant departed after learning that O'Bannon was not there. The victim testified that at this time defendant had a "goofy" look in his eyes, and spoke more slowly than usual. The victim was acquainted with defendant, but at this time knew him only by his first name, "Michael." Defendant had visited the victim's apartment several times with O'Bannon, and on several occasions, including the previous evening, had come to the apartment looking for O'Bannon.

After Mrs. Longmire left, the victim and her three-year-old daughter went to bed about 10:30 P.M. They shared the same bed in the one bedroom apartment. About an hour later, the victim was awakened by a loud crash at the front door. She saw defendant standing over her bed. He held a knife against her neck, and threatened to harm her daughter if she resisted. He ripped off her night clothes, and had intercourse with her. Defendant then asked for her money. When she did not reply, he asked if Philip had the money, and she stated that he did. Defendant threatened to harm her if she told anyone what had happened, and left the apartment.

After defendant left, the victim wrapped her daughter in a sheet, and ran across the street to Mrs. Longmire's apartment. She told the latter that Michael stated that he had a knife and that he had raped her. The police were summoned, and the victim was taken to the Roseland Hospital.

Although the lights were out during the commission of the crime, the victim testified that she could see defendant plainly. The windows in

the apartment were long and had thin shades. The light from the street outside and from the I.C. station fully illuminated the room. During the commission of the crime, the victim could see the defendant's facial characteristics plainly. He had a "natural" haircut, and his hair was uncombed and unkempt. Defendant was wearing the same dark sweatshirt, dark pants and gym shoes that he had worn earlier in the evening. The victim further testified that Philip O'Bannon sometimes stayed at her apartment all night, and that he had clothes at the apartment.

Patricia Longmire testified that she noted that the defendant had come to the victim's apartment about 9:30 P.M. on the evening in question looking for Philip O'Bannon. He was wearing dark clothes and gym shoes. At about 11:45 P.M., the victim, visibly upset and carrying her daughter, came to the Longmire apartment. She immediately stated to Mrs. Longmire, "Michael kicked open the door and raped me." In response to a question, the victim also told Mrs. Longmire that the defendant said he had a knife and threatened to harm her.

Philip O'Bannon testified that he was acquainted with the defendant for several months prior to the incident in question. Defendant had visited the victim's apartment with O'Bannon on several occasions. O'Bannon saw the victim a few hours after the incident and noticed scratches on her neck. Mrs. Longmire also noticed these scratches, but Officer John Efantis of the Chicago Police Department, the first officer at the scene, did not. O'Bannon, Mrs. Longmire and Officer Efantis all testified that even with the lights extinguished and the shades drawn in the victim's apartment, enough light came in from sources outside the apartment to see and observe plainly.

Sergeant Richard O'Connell of the Chicago Police Department, final witness for the State, testified that on September 19, 1970, he observed the door to the victim's apartment to be cracked and ajar. When Sergeant O'Connell started to relate a conversation he had with defendant at the police station on September 21, 1970 in which defendant had made certain exculpatory statements, defense counsel objected. At a conference outside the presence of the jury, it developed that, despite defendant's pre-trial motion for the production of all statements of the defendant, both written and oral, in the State's possession, the statements made to Sergeant O'Connell had not been furnished to the defense. At the conference, O'Connell stated that he was testifying from personal notes made by him at the time of the conversations but not included in the official police file. The prosecutor represented to the court that he was aware of the conversations prior to putting O'Connell on the stand, but did not know of them prior to trial. The trial court sustained defendant's objection, and ruled that, because of the surprise to the defense,

he would not permit Sergeant O'Connell to testify in the case in chief as to the conversations had with defendant. The court ordered the prosecution to furnish O'Connell's notes to the defense, and stated that, if he determined that the State had not deliberately concealed the statements, he would permit rebuttal testimony concerning the statements. The trial court instructed the jury to disregard any testimony which O'Connell had already given concerning statements made by the defendant.

The defense offered testimony of an alibi. Isaac Thompson, a friend of defendant's, testified that on the evening in question he was with defendant. Defendant came to Thompson's apartment at 8:15 P.M., and at 8:30 P.M. they drove to the area of 47th and Indiana. They remained in that vicinity until about 10:00 P.M., when defendant returned Thompson to his home. They parted company about 10:30 P.M.

Sandra Alexander, defendant's fourteen-year-old sister, testified that on the evening in question, she observed the defendant return home about 10:30 P.M. Defendant left again, but returned in 15 minutes. He admonished Sandra for being up so late. Defendant then listened to records, and she noticed that the light went out in his room about 11:40 P.M.

Defendant testified that he was with Isaac Thompson from about 8:30 P.M. until 10:30 P.M. in the vicinity of 47th and Indiana. Defendant arrived home about 10:40 P.M., and left shortly thereafter to get something to eat. He returned within 15 minutes, and spoke to his mother and sister. He did not leave his apartment again that evening. He admitted that these were not the same details he had given the police when originally questioned. Defendant, Isaac Thompson and Sandra Alexander all testified that on the evening in question defendant was wearing khaki pants, a light green jacket and "steel mill" boots, not gym shoes. Defendant stated that he was acquainted with the victim, but had not raped her and had not been at her apartment on the evening in question.

It was stipulated that the vaginal smear taken of the victim at the Roseland Hospital was negative for sperm. It was also stipulated that defendant was 22 years old.

The trial judge found that the prosecution had not wilfully concealed Sergeant O'Connell's conversations with defendant. The court also held that, since the element of surprise had been removed, the testimony of Sergeant O'Connell as to the conversations would be permitted on rebuttal. Sergeant O'Connell testified in rebuttal that defendant told him that he had returned home at about 11:15 P.M. after an evening with Isaac Thompson. He watched television until he retired at 1:00 A.M.

Defendant also told Sergeant O'Connell that he had not seen or talked to anyone during this time.

■■ Defendant's first contention is that the introduction into evidence of his exculpatory in-custodial statements to Sergeant O'Connell constituted reversible error. He argues that the State's failure to produce such statements after his pre-trial motion for the discovery of such statements, should have acted as a bar to their use by the State during trial. We do not agree. The controlling case on this issue is *People v. Milligan*, 107 Ill.App.2d 58, 245 N.E.2d 551. In that case, the State, after responding negatively to a pre-trial motion for the production of any statements, attempted at trial to introduce into evidence certain exculpatory statements made by the defendant. After the prosecutor represented to the trial court that he was not aware of the statements until trial had begun, the trial court permitted the prosecution to introduce the statements of the defendant during its case in chief. This court, in affirming the conviction, stated at p. 64:

> "Remarks made by defendant of an exculpatory nature, upon discovery during trial, are not rendered inadmissible because not disclosed in answer to a pretrial discovery motion."

In the instant case, the trial court restricted the use of the exculpatory remarks to rebuttal testimony. Moreover, the court permitted such use only after determining that the State had not wilfully concealed the statements from the defense. The trial court also pointed out that the element of surprise had been removed. We find no reversible error in the admission of such evidence.

Defendant's second contention is that the trial court committed reversible error in allowing into evidence certain statements made by the victim to Mrs. Longmire after the incident. Patricia Longmire testified that at approximately 11:45 P.M. on the night in question the victim came to her door, crying and upset, and said that Michael had kicked down her door and raped her. Mrs. Longmire also testified that in response to a question the victim stated that he said he had a knife and threatened to hurt her. This conversation took place within five minutes of the incident.

■■ A hearsay statement may be admissible in evidence if it qualifies as a "spontaneous declaration," and thus becomes one of the exceptions to the hearsay rule. (*People v. Hill*, 60 Ill.App.2d 239, 208 N.E.2d 662.) Three factors are necessary to bring a statement within the "spontaneous declaration" exception to the hearsay rule: (1) an occurrence sufficiently startling to produce spontaneous and unreflecting statement; (2) the absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (*People v. Poland*, 22 Ill.2d 175, 174

N.E.2d 804; *People v. Parisie*, 7 Ill.App.3d 1009, 287 N.E.2d 310.) Although the fact that a statement results from extensive questioning can exclude it from this exception (*People v. Taylor*, 48 Ill.2d 91, 268 N.E.2d 865), the fact that the declaration comes in response to some inquiry does not automatically require exclusion. (*People v. Damen*, 28 Ill.2d 464, 193 N.E.2d 25.) And it is well settled that the statements of a rape victim on inquiry do come within this exception to the hearsay rule where such are made when the victim is still in a state of excitement from the incident, and where such statements relate to the incident. *People v. Damen, supra; People v. Dery*, 74 Ill.App.2d 112, 219 N.E.2d 536.

■■ In the instant case, the out-of-court statements were made within five minutes of the occurrence. The victim, according to the evidence, was crying and visibly upset. The statements related to the circumstances of the crime. The victim was not questioned extensively; rather Mrs. Longmire asked only one question. The statements to Mrs. Longmire were admissible as "spontaneous declaration" exceptions to the hearsay rule, and the trial court did not err in allowing them into evidence.

■■ Under this argument, defendant also urges that the trial court committed reversible error in allowing Officer Efantis to testify that after he left the victim's apartment he proceeded to an Indiana Avenue address. It is clear from the record, however, that this ancillary statement could not have been prejudicial to defendant.

Defendant's third contention is that three comments made by the prosecutor during trial in the presence of the jury were so improper as to have denied him a fair trial. Under this heading, defendant also maintains that the action of the trial judge in restricting his cross-examination of the victim was prejudicial error.

■■ In our view, the prosecutor's comments, although improper, did not constitute reversible error, nor did they affect defendant's right to a fair trial. During recross-examination of Mrs. Longmire, defense counsel asked if she had given any statements to the police. The prosecutor objected on the grounds that the question was beyond the scope of redirect examination, and interposed the statement that the State had given its file, including all the police reports, to defense counsel the day before. In *People v. Scott*, 4 Ill.App.3d 279, 280 N.E.2d 715, this court ruled that a defendant was not prejudiced by the prosecution's tendering of the police reports to defense counsel in the presence of the jury. The court pointed out that no argument had been made to the jury by the prosecution on the inference that might be drawn by the failure of the defense to present the reports into evidence. (Also see *People v.*

*Sanders,* 110 Ill.App.2d 85, 249 N.E.2d 124.) In the instant case, the prosecutor did not furnish the reports to the defense in the presence of the jury, but merely commented that he had furnished the reports on the previous occasion. The prosecutor did not again refer to the matter, and did not argue the point to the jury. Under those circumstances, defendant was not prejudiced and there was no reversible error.

■■ The second remark complained of occurred during the cross-examination of the defendant, when the prosecutor told the defendant to stop looking at his counsel and to look at him. The trial judge immediately instructed the jury to disregard the remark. The comment, although inept, could have no prejudicial effect on the defendant.

■■ Thirdly, in response to defense counsel's closing argument, the prosecutor stated that he believed that the victim had testified that defendant did not have an orgasm. There had been no direct testimony admitted on this subject. The comment of the prosecutor, although inaccurate, did not constitute reversible error.

■■ The defendant also complains that the trial judge committed reversible error in restricting his cross-examination of the victim regarding the lighting conditions in her apartment at the time of the occurrence. An examination of the record reveals that the victim was examined exhaustively on the lighting conditions in her room, and the court did not err in refusing to allow further examination on the subject.

■■ We find no merit in defendant's fourth contention that defendant was not proved guilty beyond a reasonable doubt. In sex offenses, often stemming from clandestine circumstances difficult both to prove and disprove, a reviewing court is charged with a special duty to exercise the utmost caution and circumspection in examining the evidence upon which the conviction is predicated. However, the triers of fact are in a superior position to judge the credibility of the witnesses and to weigh their testimony, and a reviewing court will not disturb the determination of the fact finders in this regard unless the evidence, as a whole, is so unsatisfactory as to raise a reasonable doubt. (*Pointer v. Pointer,* 6 Ill.App.3d 113, 285 N.E.2d 171.) In the present case, the victim was acquainted with defendant. He had been to her apartment on several occasions. Her testimony and identification of defendant were clear, positive, convincing and unshaken. The testimony of one eyewitness when clear and convincing, is sufficient to support a conviction. (*People v. Mack,* 25 Ill.2d 416, 185 N.E.2d 154.) Additionally, the victim's immediate complaint to Mrs. Longmire that she had been raped provided corroboration of her testimony. (*People v. Davis,* 10 Ill.2d 430, 140 N.E.2d 675.) Any conflicts in testimony were for the triers of fact to resolve, and they were not obliged to believe the alibi testimony pro-

vided by the defense. (*People v. Jackson,* 95 Ill.App.2d 28, 237 N.E.2d 858.) Defendant was proved guilty beyond a reasonable doubt.

■■■■ Defendant's final contention is that the sentences of ten to fifteen years were excessive, and should be reduced by this court. The Supreme Court has indicated that the authority of a reviewing court to reduce sentences should be exercised with considerable care and circumspection. (*People v. Taylor,* 33 Ill.2d 417, 211 N.E.2d 673.) Although defendant was young and had no prior criminal convictions, the instant crime was particularly heinous. Armed with a knife, the defendant raped the victim, and threatened to injure both the victim and her three-year-old daughter. Under these circumstances, we do not believe that a reduction of the sentences imposed is appropriate.

For the reasons stated, the judgments of the circuit court are affirmed.

Judgments affirmed.

DEMPSEY, P. J., and McGLOON, J., concur.