THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM SLAVIN (Impleaded), Defendant-Appellant.

First District (2nd Division)   No. 77-893

Opinion filed November 8, 1978.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Paul L. Zido, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

A jury found defendant, William Slavin, guilty of rape, indecent

liberties with a child, and contributing to the sexual delinquency of a child. He was sentenced to a term of 8 to 24 years imprisonment on the rape conviction. No sentence was imposed on the other two convictions.

Defendant has appealed contending: (1) the evidence was insufficient to sustain convictions of the crimes charged; (2) only one conviction may stand where multiple convictions are based upon the same act; and (3) the sentence imposed was excessive.

The only testimony describing the alleged incident was provided by the complaining witness. Complainant, who was 13 years old at the time of the incident, testified that on June 18, 1974, between 9 and 10 p.m., she and two friends, James Ross and Gary Pierce, went to the Foster Avenue beach in Chicago where they drank beer for a couple of hours. The three then proceeded to a restaurant, and while outside, a group of youths including the defendant and co-defendant, Robert Morales, who takes no part in this appeal, approached. After some conversation, the complainant, Ross, and Pierce left and walked to an apartment building where they sat on the front steps. A short time later the youths from the restaurant came to the same location.

After about an hour defendant told complainant he wanted to talk to her. The two left the group and walked to a nearby apartment building where they sat in the outer hallway. Defendant accused the complainant of telling the police something about him, which she denied. Defendant grabbed complainant by the arm, said he would kill her if she said anything, dragged her up the stairs, pushed her into a vacant apartment, shut the door, and secured it with a board. The complainant was screaming and crying. Defendant pulled her hair and told her to shut up. He unzipped his pants, slapped her, and made her lie down. Defendant took off complainant's clothes, ripping her underpants, got on top of her, and put his penis into her vagina.

At this point the other youths broke open the door and complainant heard the co-defendant say, "I am going to get some of that." The complainant got halfway up when the co-defendant struck her in the face causing her to fall back on the floor. The co-defendant then got on top of her and put his penis into her vagina. The other youths did the same.

After the others left, complainant sat alone in the apartment for awhile. She then went to the apartment of a friend, Gloria Liebersbach, located about six or seven blocks away. Complainant rang the buzzer but there was no response. Complainant sat outside for awhile, and then went around the back of the building and sat there for a time. Complainant next went to Carol Stasbury's apartment located in the same building. Stasbury, a girlfriend of Liebersbach, had met complainant several times in the past. Upon entering, in response to a question as to what had happened, complainant told Stasbury she had been raped.

Stasbury[1] corroborated this testimony and said that it was about 7 a.m. on June 19, 1974, when complainant appeared at her apartment. Stasbury described the complainant as extremely disheveled, dirty, with blood stains on her trousers, scratches and bruises on her body. Complainant was crying hysterically and asked about Liebersbach. Complainant told Stasbury she had been raped. Stasbury ran a bath for complainant and observed bruises on the complainant's sides, lower abdomen and scratches on her chest. At about 9 a.m. Stasbury called the elementary school complainant attended and talked with a woman there who acted as a liason between complainant and her mother.

Thereafter, complainant's friend, Liebersbach, arrived and she and complainant went to her apartment. After discussing what to do, they both went to complainant's home at 2:30 p.m. and related the occurrence to complainant's mother who called the police. At the police station complainant looked through police mug books, each containing 100 to 300 photographs, and picked out photographs of defendant and co-defendant. She also identified both defendant and co-defendant in court.

That same day, complainant, accompanied by Sergeant Esmadge Cristia and two other Chicago police officers, went to the apartment building where the rape allegedly occurred. Sergeant Cristia testified that he recovered a pair of torn panties from the first floor apartment. Cristia took the panties to the police station as evidence but mistakenly marked them as no longer needed and they were destroyed.

Complainant was taken to the Ravenswood Hospital emergency room where she was examined by Dr. Ghousia Khan. Dr. Khan, testifying from charts of June 19, 1974, noted that the complainant was conscious and alert, that there was a bruise on the left side of her neck, and tenderness on the right side of her chest and rib area. No other injuries were noted on this chart. Samples for the presence of sperm were taken.

Bernadette Kwak, a Chicago Police Department microanalyst, performed tests on these samples and found the presence of spermatozoa. Kwak testified that there was no way to determine whether the spermatozoa came from one or more individuals, nor was there any way to trace it to any one individual.

Dr. Khan also examined complainant the next day, on June 20, 1974, at which time complainant was bleeding from the vagina and had tenderness in her lower abdomen. The doctor found this consistent with the complainant's normal menstrual cycle. The doctor also testified that she called Dr. J. R. Bernier, complainant's treating physician for the past four or five years, so that he might examine complainant.

---

[1] The record and briefs identify this witness as Carol Stansbury. However, when under oath this witness spelled her last name which the record indicates as Stasbury. Therefore, we have adopted this spelling in our opinion.

That same day, Dr. Bernier examined complainant. His main concern at that time was to determine the cause of the bleeding. He found the bleeding due to complainant's normal menstrual cycle. He also found a minor laceration at the vaginal orifice which he stated could be due to any type of trauma, and several minor abrasions on the complainant's inner thighs. The doctor admitted complainant to the hospital with symptoms of marked anxiety and prescribed a tranquilizer.

The defense called Chicago Police Officer Marvin Shear as a witness. Officer Shear testified that when he talked to complainant on June 19, 1974, she told him she was in a hallway with defendant when another man came up and took her into an apartment. On cross-examination the officer stated that the report he made out on that day indicated complainant was very upset, that she had bruises on her head, chest, and legs, and that complainant told him that defendant was one of the individuals who had raped her. The jury found defendant guilty of rape, indecent liberties with a child, and contributing to the sexual delinquency of a child. After a hearing in aggravation and mitigation, defendant was sentenced on the rape conviction only.

## I.

At trial defendant offered no theory of defense. He appeals the conviction of rape solely on the grounds that the evidence presented against him was insufficient. In support of this argument, defendant contends that approximately seven hours passed before complainant told anyone of the alleged rape, and this lack of a prompt complaint fails to corroborate her testimony.

At the outset it is to be noted that this testimony is not the spontaneous declaration which is admissible, if certain factors are present, in any proceeding as an exception to the hearsay rule. (See *People v. Damen* (1963), 28 Ill. 2d 464, 470-72, 193 N.E.2d 25.) On the other hand, we consider this as a complaint of an alleged rape victim which may be admitted as corroborative statements.

■■ The time lapse between the complaint and the occurrence will vary with the circumstances of each case, and there is no definite limit of time within which the complaint must be made. (*People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 285; *People v. Garreau* (1963), 27 Ill. 2d 388, 392, 189 N.E.2d 287; *People v. Reese* (1973), 54 Ill. 2d 51, 58, 294 N.E.2d 288.) A complaint made without inconsistent or unexplained delay may be properly shown. *People v. Damen* (1963), 28 Ill. 2d 464, 473, 193 N.E.2d 25.

In *People v. Houck* (1st Dist. 1977), 50 Ill. App. 3d 274, 365 N.E.2d 576, this court reviewed the cases where delays in the complaint were not viewed as inconsistent or unexplained, and concluded as follows:

"The common thread which binds these divergent fact patterns is

that during the delay the complainants were incoherent, fearful, hysterical, and/or emotional and, when they found a place or person lending them security, they made the charge as an outpouring of injury." 50 Ill. App. 3d 274, 285.

■■ In the present case, after the alleged incident, the complainant went directly to the apartment of a close friend. Finding her friend not at home and after waiting for her for several hours, complainant went to the apartment of Carol Stasbury whom she had previously met through her friend. Stasbury testified that when she answered the door, complainant asked where her friend was and began to cry hysterically. After gaining some composure, complainant told Stasbury she had been raped. Under these circumstances, we do not find the delay in the complaint to be inconsistent or unexplained. We think the fact of the complaint was properly admitted into evidence.

■■ Defendant's second argument alleges that complainant's testimony regarding the fact that she told Carol Stasbury she had been raped and Stasbury's testimony corroborating this statement was prejudicial error depriving defendant of a fair trial. At the outset we note that at trial, defendant did not object to Stasbury's testimony that complainant told her she had been raped. Thus the issue of whether Stasbury's testimony was improperly admitted into evidence was not properly preserved for review. *People v. Akis* (1976), 63 Ill. 2d 296, 299, 347 N.E.2d 733.

In Illinois, the general rule is that the testimony of a witness cannot be bolstered or supported by showing that a witness has made similar statements out of court in harmony with his testimony on the witness stand. (*People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363; *People v. Buckley* (2d Dist. 1976), 43 Ill. App. 3d 53, 55, 356 N.E.2d 1113.) An exception to this rule has been made in rape cases where corroboration of a prompt complaint has been held to be proper. *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25; *People v. Buckley*, at 55.

■■ Under the corroborative statement exception, statements made by the complainant as to what occurred which are made at a time too remote to qualify as spontaneous declarations may be admissible. The purpose is to negate the presumption arising from silence. (*People v. Secret*, at 4; *People v. Damen*, at 472.) Not only is complainant's statement that she had been raped proper but also the statement by the person to whom the complaint was made is proper. (*People v. Romano* (1923), 306 Ill. 502, 503-04, 138 N.E. 169.) To be admitted as a corroborative statement, it must have been made without inconsistent or unexplained delay and also not as a result of a series of questions. *People v. Taylor* (1971), 48 Ill. 2d 91, 97, 268 N.E.2d 865.

Defendant, relying on *Taylor* as authority, argues that complainant's comments were made in response to questions asked by Stasbury and thus outside the scope of the corroborative statement exception to the

hearsay rule. In *Taylor*, the 16-year-old complainant walked to a fire station and asked a fireman if she could use the phone. The fireman asked her if anything was wrong, to which she responded she wanted to call her father. It was only after she had gone to the telephone and the fireman continued his questioning that she told him she had been raped. The court held complainant's statement inadmissible and opined that had the question not been asked, her statement would not have been made.

The fact the declaration comes in response to an inquiry does not automatically exclude it from the exception. (*People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25; *People v. Jacobs* (4th Dist. 1977), 51 Ill. App. 3d 455, 458, 366 N.E.2d 1064; *People v. Hood* (1974), 59 Ill. 2d 315, 319 N.E.2d 802.) In *Hood*, the complainant went to the apartment of a friend and was told through a closed door her friend was not at home. As she turned to leave, another friend called to her from a vacant apartment downstairs where a few young people had gathered. Complainant was questioned as to what had happened, but was unable to tell them for fear her assailant would kill her. She then started to cry and became hysterical, unable to speak. After regaining some control, she told them she had been raped. The supreme court, after distinguishing its holding in *Taylor*, held this statement admissible.

■■ In the present case, the 13-year-old complainant appeared at Stasbury's door disheveled, bruised, and crying hysterically. After being asked what had happened and upon gaining some composure, complainant responded that she had been raped. This statement was not made in response to a series of questions. Considering complainant's emotional state, we do not find in the record evidence to destroy the nature of her statement. In our opinion her statement was properly admitted.

Defendant's third argument concerns the lack of evidence as to force and violence used against complainant. We find this argument to be without merit. Complainant testified that defendant pulled her hair, slapped her, and forcibly raped her. Four other witnesses, Carol Stasbury, Dr. Khan, Dr. Bernier, and Officer Shear (defendant's own witness) testified to bruises located on various parts of complainant's body. And Sergeant Cristia testified to recovering a pair of torn panties from the alleged scene.

Defendant's fourth argument concerns inconsistencies in the complainant's testimony. We have reviewed each of these inconsistencies. These were brought to the attention of the jury. We must conclude the jury believed the complainant's testimony notwithstanding the inconsistencies.

■■■ It is the duty of a reviewing court to closely examine the evidence in a rape case, but in doing so the court may not encroach upon the

function of the trier of fact to weigh credibility and otherwise assess the evidence presented. (*People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 285; *People v. Reese* (1973), 54 Ill. 2d 51, 57-58, 294 N.E.2d 288.) The trial court's finding will not be reversed on appeal unless the evidence is so palpably contrary to the finding or so unreasonable, improbable, or unsatisfactory as to cause reasonable doubt as to the guilt of the accused. That evidence has been conflicting will not justify a reversal of a finding by the trier of fact. (*People v. Reese*, at 58.) The testimony of a prosecutrix alone is sufficient to support a conviction for rape where the testimony is found to be clear and convincing or adequately corroborated. (*People v. Reaves* (1962), 24 Ill. 2d 380, 183 N.E.2d 169.) The testimony of complainant in the present case is neither insufficient nor uncorroborated. Her testimony was positive and her identification of defendant unhesitating. We cannot say based upon the entire record that the proof here is so unsatisfactory as to create a reasonable doubt of defendant's guilt.

## II.

■■ Defendant argues, and the State concedes, that based upon the authority found in *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, only one conviction may stand where, as in this case, multiple convictions are based upon the same act. We agree. We find that defendant's convictions for indecent liberties with a child and contributing to the sexual delinquency of a child were improper because the same physical act upon which defendant was convicted of rape also was the basis for these other two convictions. In view of our finding that defendant's conviction of rape should be affirmed and pursuant to Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)(5)), we vacate the convictions of indecent liberties with a child and contributing to the sexual delinquency of a child upon which no sentence was imposed. *Cf. People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838; *People v. Smith* (1st Dist. 1978), 59 Ill. App. 3d 480, 493, 375 N.E.2d 941.

## III.

Defendant's final contention is that his sentence of 8 to 24 years imprisonment is excessive. This court may reduce the punishment imposed by the trial court upon appeal. (Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)(4).) But the sentence imposed by the trial court will not be disturbed unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose. *People v. Heflin* (1978), 71 Ill. 2d 525, 545, 376 N.E.2d 1367.

The Illinois Constitution provides that all penalties should be determined according to the seriousness of the offense and with the

objective of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, §11.) The Unified Code of Corrections calls for a four year minimum sentence in cases of rape unless, in the trial court's consideration of the nature and circumstances of the offense together with the history and character of defendant, it is determined that a higher minimum sentence is appropriate. (Ill. Rev. Stat. 1975, ch. 38, pars. 11—1, 1005—8—1(c)(2).) In determining the proper sentence, it is appropriate to consider the nature of the crime, the failure of a defendant to show a penitent spirit (*People v. Morgan* (1974), 59 Ill. 2d 276, 282, 319 N.E.2d 764), the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882). In addition to considering the defendant, one of the principal purposes of sentencing is the protection of the public. It is the trial judge who is in a superior position to consider these factors. *Morgan.*

The record indicates that a little over a year before the rape occurred, defendant was convicted of aggravated battery and sentenced to five years felony probation. The trial judge found defendant's crime "mindboggling in its awfulness", and that depending on defendant's own conduct he would in all likelihood be a relatively young man when released from prison since at the time of sentencing he was 17 years old. Recently in *People v. Robinson* (1978), 73 Ill. 2d 192, 204, 383 N.E.2d 164, the Illinois Supreme Court, quoting from *Coker v. Georgia* (1977), 433 U.S. 584, 597, 53 L. Ed. 2d 982, 992-93, 97 S. Ct. 2861, 2868, stated, "[S]hort of homicide, rape is the 'ultimate violation of self.' "

■■ Imposition of sentence is a matter of judicial discretion and absent an abuse of this discretion, the sentence of the trial court may not be altered upon review.[2] (*People v. Perruquet,* at 153.) Based upon the record in this case we cannot say the trial court abused its discretion in imposing sentence.

For the foregoing reasons, we affirm the conviction and sentence for rape and vacate the convictions of indecent liberties with a child and contributing to the sexual delinquency of a child.

Affirmed in part; vacated in part.

STAMOS, P. J., and PERLIN, J., concur.

---

[2] We note a recent amendment to the Unified Code of Corrections effective February 1, 1978, which allows a defendant convicted of a felony to raise the issue of sentence on appeal, but provides that there is a rebuttable presumption that the sentence imposed by the trial court is proper. The reviewing court is authorized to modify the sentence and enter any sentence that the trial court could have entered, including increasing or decreasing the sentence, or entering an alternative sentence to a prison term. 1978 Ill. Legis. Serv. 190 (West) (to be codified as Ill. Rev. Stat., ch. 38, par. 1005—5—4.1).