THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY WATTS, Defendant-Appellant.

First District (3rd Division)   No. 84—1366

Opinion filed December 30, 1985.

Steven Clark and Jeffrey Walker, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, James S. Veldman, and Christopher J. Cummings, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Defendant Timothy Watts was charged with rape, deviate sexual assault and aggravated kidnaping. A jury found defendant guilty of all three charges, and the trial court sentenced him to concurrent terms of 12 years on each charge. On appeal defendant contends that he was denied his right to effective assistance of counsel at trial; his due process rights were violated by prosecutorial misconduct at trial; that the admission of hearsay statements deprived him of a fair trial; that he was not proved guilty beyond a reasonable doubt; and that he was improperly sentenced and that the sentences imposed were excessive.

On April 17, 1982, at 2 a.m., defendant went to the home of complainant, a 16-year-old girl. Defendant said that he wished to see complainant's boyfriend, John Rivera. When informed that Rivera was not there, defendant insisted that she telephone Rivera. Rivera wanted to know what defendant wanted, and complainant went outside to defendant's automobile, where defendant was now sitting. Complainant was wearing blue jeans and a T-shirt.

Complainant testified that when she refused to get in defendant's car, he emerged, grabbed her by the arm, forced her into the car, and drove off quickly. Defendant held complainant's head down on the front seat, told her to keep her mouth shut, and threatened to kill her. He drove to his garage at 33rd Street and Western Avenue in Chicago. There, he pulled complainant from the car, and led her down the alley into the garage. In the garage, he placed a piece of carpeting on the floor and ordered complainant to undress. When she refused, he removed her clothes. Defendant then forced her to commit an act of oral copulation and raped her.

Defendant ordered complainant to get dressed and forced her back into the car. Defendant again held complainant's head on the front seat. They drove around, and defendant purchased cigarettes from a gas station without leaving the car. He drove her back to the same garage, pulled her inside and placed another piece of carpeting inside a car. When she again refused to undress, defendant pulled down her pants. Defendant again forced complainant to perform an act of oral copulation and to have anal and sexual intercourse with him. Defendant told her to break up with her Puerto Rican boyfriend, but she refused. Defendant led complainant to his car, and left her near her home.

When complainant returned home, she saw Rivera in the kitchen and asked where her mother was. When Rivera told complainant that her mother was in the bathroom, complainant went there. Complainant's mother asked if she was all right and if she had been raped. Complainant started to cry and told her mother that defendant raped her. Complainant's mother called the police, and complainant was taken to a hospital.

On cross-examination, complainant testified that she knew defendant was acquainted with Rivera, and that she had been in defendant's home with Rivera on one occasion. Defendant had never been to her home before that morning. Complainant and Rivera had also been together in defendant's car once. After forcing her into the car on the morning in question, defendant held on to her hair and head while driving. Complainant had seen defendant with a knife before, noticed

that he wearing a knife case attached to his belt, but did not see a knife that morning. She did not scream or try to get away that morning because defendant had threatened her and she was frightened.

Complainant's mother testified that defendant came to her home on April 17, 1982, at 2 a.m. and asked for Rivera. Complainant went to the door and then returned to use the telephone. After her daughter went back outside to talk to defendant, the mother heard the squealing of tires. She could not find complainant or defendant. The mother found the phone off the hook, and she told Rivera, who was waiting for complainant's return to the telephone, that complainant had disappeared. The mother began looking for complainant, and was joined in the search by Rivera.

Complainant's mother testified that complainant was pale and her hair was wild when she returned. She was silent and stood in the bathroom and stared at herself in the mirror. Complainant's mother twice asked if she was all right and complainant did not reply. When complainant's mother asked if she had been raped, complainant burst into tears and said that she had been raped. Complainant's mother called the police and accompanied complainant to the hospital.

John Rivera testified that complainant telephoned him at 2 a.m. on April 17, 1982, and said that defendant was at her home demanding to speak to him. Rivera asked complainant to find out what defendant wanted, but complainant never returned to the telephone. Rivera spent most of the night searching for complainant. He then waited at her home until her return at 6 a.m. After the police talked to complainant, Rivera led them to defendant's home. Rivera did not need an automobile part and defendant was not looking for a part for him.

Dr. Malikha Rogers testified that he treated complainant at the hospital. She sustained a small bruise on her left breast and three bruises on her left arm in a "line-like configuration." Officer Robert Lebak of the Chicago police department testified that he responded to the call that morning and observed complainant crying. Her hair was disheveled and her face was red. Complainant told him that she was taken to a garage and raped by defendant. Officer Anton Wenskus testified that when he went to arrest defendant, defendant's wife approached and stated, "I guess you are here for my husband."

A microanalyst of the Chicago Police Department Crime Laboratory testified that examination of the oral, vaginal and rectal swabs and of complainant's pubic hairs and underwear did not reveal the presence of spermatozoa. Sperm was discovered on complainant's blue jeans. The witness recovered a number of fibers from complainant's

pubic hairs, underpants and jeans which were "similar in all of the characteristics" tested to the two pieces of carpet found in defendant's garage.

Defendant's wife testified for the defense that complainant and Rivera had been at defendant's home on several occasions. Complainant was interested in defendant and followed him with her eyes. On April 16, 1982, the witness, defendant, and their four-year-old daughter drove around looking for an engine for Rivera. They quarreled about defendant's drinking, and he dropped off his wife and daughter at 1 a.m. When defendant returned at 6 a.m., he said that he had been driving around with complainant. Mrs. Watts denied telling the police that they must be there for her husband when they arrived that morning.

Defendant testified that he had sexual intercourse with complainant's consent on the morning in question. He denied forcing complainant into his automobile and garage. Defendant went to complainant's home looking for Rivera to tell him he had an engine. Complainant agreed to defendant's suggestion that they go for a ride, and it was she who initiated the sexual contact at the garage. Complainant asked if she broke up with Rivera would defendant go out with her. When defendant took complainant home, they saw Rivera's car parked near her house. Since they did not want to encounter Rivera, complainant told defendant to drop her off at the alley.

Defendant testified that at the time of his arrest he told the police he did not have sexual relations with complainant because he did not want to lose his wife. He did not tell the police that he talked to complainant about getting an engine for Rivera. He also stated that he had a pouch on his belt, but never carried a knife.

Defendant initially contends that he was denied his sixth amendment right to effective assistance of counsel at trial.

In order to show ineffective assistance of counsel, defendant must demonstrate that judged by an objective standard, counsel's performance was incompetent and that defendant suffered prejudice as a result of counsel's incompetence. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) A reviewing court will not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy. *People v. Mitchell* (1984), 105 Ill. 2d 1, 473 N.E.2d 1270, *cert. denied* (1985), 470 U.S. 1089, 85 L. Ed. 2d 153, 105 S. Ct. 1857.

Guided by those principles, we shall examine each claim of ineffec-

tive assistance.

■ At the hearing on the motion for a new trial, defendant testified that he told defense counsel before trial about prior sexual contact with complainant. Defendant described this contact as "kissing and stuff." Defendant also told counsel that complainant chased him. We do not find such allegations to be sufficient evidence of prior sexual contact that would have altered the result of the trial. Defense counsel presented evidence of the relationship between complainant and defendant through the testimony of defendant's wife. Defendant's decision to impeach complainant's testimony in this manner does not demonstrate incompetence and, as a matter of trial strategy, is beyond the scope of this court's inquiry. *People v. Puente* (1984), 125 Ill. App. 3d 152, 465 N.E.2d 682.

■ Nor does counsel's failure to impeach complainant's observation of defendant with the fact that he had venereal warts demonstrate incompetence. Since defendant presented a defense of consent, not misidentification, such testimony was irrelevant. Moreover, given the distasteful nature of defendant's physical condition, elicitation of such testimony would have been detrimental to defendant.

■ Defendant also urges that his trial counsel was unprepared to defend him because counsel was under an emotional strain resulting from his son's hospitalization three weeks before trial. Defendant attempted to support this argument by presenting testimony from two assistant public defenders at the hearing on the motion for a new trial about conversations they had with trial counsel. The trial court, however, excluded this testimony as hearsay.

The trial court properly excluded the proffered testimony. The testimony did not fall within exceptions to the hearsay rule as admissions or declarations against interest. (*People v. McKee* (1968), 39 Ill. 2d 265, 235 N.E.2d 625; *People v. Bonilla* (1983), 117 Ill. App. 3d 1041, 453 N.E.2d 1322.) Although trial counsel's alleged statements may have affected his pecuniary interest, there was no showing that the declarant was unavailable. Indeed, trial counsel offered to testify at the hearing where he withdrew as counsel and new counsel entered an appearance.

■ The trial court allowed defendant to make an offer of proof setting out trial counsel's statements to the assistant public defenders. They had a conversation with counsel a week before trial in which he said he had not read the police reports, was feeling pressure due to his son's injuries in an accident, and that he had not prepared the case for trial. The record demonstrates that at the time of trial, counsel was prepared and competent. He presented and answered dis-

covery, extensively cross-examined the State's witnesses, moved for a directed verdict, presented defense witnesses and set out the defense of consent in closing argument. Such conduct demonstrates preparation and familiarity with the case. See *People v. Pugh* (1982), 106 Ill. App. 3d 901, 436 N.E.2d 737.

■ Defendant offers as another example of counsel's incompetency his failure to cross-examine the police technician about the nature of the sperm stain on complainant's blue jeans. The decision to cross-examine a witness is a matter of trial strategy and, therefore, beyond the scope of our review. (*People v. Puente* (1984), 125 Ill. App. 3d 152, 465 N.E.2d 682.) Moreover, since defendant admitted that he had sexual intercourse with complainant, the evidence about sperm was irrelevant.

■ With respect to defendant's claim that he was prejudiced by trial counsel's failure to impeach complainant on two points in her preliminary hearing testimony, we find the discrepancies in testimony were inconsequential to the outcome of the trial. (*People v. Smalley* (1984), 122 Ill. App. 3d 70, 460 N.E.2d 866.) The fact that defendant wore a black case on his belt at the time of the incident was not brought out by the State to show defendant's use of force. Any misstatement by complainant as to whether defendant had earlier carried a knife on his belt case had little bearing on the use of force. Similarly, the discrepancy regarding which hand defendant used to shift and steer the car while driving was minor compared to her other unequivocal testimony. We do not consider these minor discrepancies in complainant's testimony to be so damaging to her credibility that counsel's presentations of the conflicting testimony as an offer of proof instead of as impeachment evidence resulted in substantial prejudice to defendant.

■ Finally, defendant contends that trial counsel's failure to mention that defendant had not taken his antidepressant drugs destroyed defendant's credibility. Defendant maintains that because he did not take his medicine his testimony was rambling and incoherent. We find it purely speculative to suggest that the outcome of the trial court may have been different if counsel had commented on defendant's lack of medication. (See *People v. Stewart* (1984), 101 Ill. 2d 470, 463 N.E.2d 677, *cert. denied* (1985), 469 U.S. 920, 83 L. Ed. 2d 237, 105 S. Ct. 303.) Indeed, the fact that defendant needed the drugs may have adversely affected his case. Therefore, counsel's decision not to comment on the subject was a matter of trial strategy and outside the scope of our review. (*People v. Stewart* (1984), 101 Ill. 2d 470, 463 N.E.2d 677.) Considering the totality of trial counsel's conduct, we

are not persuaded that any of the alleged instances of ineffective assistance would have altered the result of the trial.

██ Defendant next contends that he was denied a fair trial by prosecutorial misconduct. Defendant argues that the State elicited testimony from complainant that was designed to appeal to the racial fears of the jury, and that the prosecutors made improper remarks during closing arguments which prejudiced him.

We reject defendant's contention that he was denied a fair trial due to complainant's testimony which characterized defendant as a white man who disliked Puerto Ricans and blacks. Complainant testified that defendant told her "he was going to give me to a guy that they called nigger and they were going to shoot me up with heroin or something, sell me to make money." Defendant told her that he could not understand her dating Rivera because going out with a Puerto Rican was like going out with a black man. Defendant claims that such remarks inflamed the passions of five members of the jury who were black or Hispanic.

We initially note that defendant failed to preserve any record of the racial or ethnic composition of the jury. More importantly, we find no prosecutorial misconduct because complainant was merely repeating language spoken by defendant to show that she was threatened and forced to submit to sexual acts and to remain with him against her will. Such testimony was admissible. *People v. Meares El* (1980), 83 Ill. App. 3d 31, 403 N.E.2d 547.

Defendant also argues that certain comments made during the prosecutor's closing arguments deprived him of a fair trial.

██ ██ In the present case, defendant made no objections to the prosecutor's remarks during closing argument and, therefore, has waived the issue on appeal. (*People v. Alvarez* (1981), 93 Ill. App. 3d 111, 416 N.E.2d 1217.) However, even considering the merits of defendant's arguments, we do not find that the comments of the prosecutor resulted in substantial prejudice to defendant. The prosecutor referred to defendant as a "violent, dangerous criminal." It is always proper during closing arguments for a prosecutor to comment on reasonable inferences which can be drawn from the evidence. (*People v. Adams* (1982), 111 Ill. App. 3d 658, 444 N.E.2d 534.) In view of the circumstances of this case, the prosecutor's characterization of defendant as violent was not improper.

██ Defendant also complains that during closing arguments the prosecutors improperly accused defense counsel and the defense witness with fabricating the defense of consent. Defendant initially told the police that he did not have intercourse with the complainant and

did not take her to the garage. At trial, he testified that he and complainant engaged in sexual intercourse in the garage. The prosecutors' comments that the consent defense was fabricated after the carpet samples were tendered to defendant were not improper in light of defendant's testimony.

■■■ The prosecutor's comment about defense counsel's trial tactics was also proper where defense counsel violated the court's order based upon the State's pretrial motion *in limine* and the tenets of the Illinois rape shield statute. (Ill. Rev. Stat. 1983, ch. 38, par. 115—7.) In any event, we do not view the comment as so derogatory as to antagonize the jury against defendant. *People v. Bodeman* (1982), 105 Ill. App. 3d 39, 433 N.E.2d 1140.

■■■ Defendant next complains that the prosecutor's description of complainant as "hysterical" immediately upon her return home was not supported by facts in evidence. Complainant's mother testified that complainant was pale, her hair was disheveled, she was very quiet and burst into tears when asked if she was all right. This description of complainant's physical condition and emotional response amply supports the prosecutor's characterization of complainant as hysterical.

■■■ Defendant finally complains that the prosecutor's comment about defendant's inability to explain the blue carpet fibers found in complainant's pubic hairs was not based on facts in evidence. At trial, defendant initially testified that he had sexual intercourse only once with complainant on the brown carpet. Defendant then stated that the blue carpet could have been with the brown one. Upon further questioning, defendant testified that he took only "a piece of carpet." Defendant finally testified that there could have been two pieces of carpet on the hood of the car where the act took place. Such equivocal and contradictory testimony fully supports the prosecutor's comment about defendant's explanation of the carpet. We conclude that the prosecutor's comments were fair and reasonable inferences drawn from the facts in evidence, and that defendant suffered no substantial prejudice as a result of the State's closing argument.

■■■ Defendant next contends that the admission of hearsay statements deprived him of a fair trial. He maintains that the testimony of complainant's mother and Officer Lebak about their conversations with complainant were improperly admitted into evidence. Defendant did not object to the admission of this testimony at trial nor complain of error in his post-trial motion. Thus, the issue of the admissibility of the testimony has not been properly preserved for review. *People v. Slavin* (1978), 66 Ill. App. 3d 525, 383 N.E.2d 1303.

■■■ Nevertheless, we find that the testimony regarding the conversations between complainant and her mother qualifies as spontaneous declarations and as corroborative statements of a prompt complaint of rape. (*People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25; *People v. Robinson* (1981), 94 Ill. App. 3d 304, 418 N.E.2d 899.) The requirements for admissibility under the spontaneous declaration exception to the hearsay rule are: an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; absence of time to fabricate; and a statement relating to the circumstances of the occurrence. (*People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164; *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25.) In deciding whether the declarant acted without thought, the court is required to consider all the circumstances surrounding the making of the statement (*People v. Harris* (1985), 134 Ill. App. 3d 705, 480 N.E.2d 1189), including the time which elapsed between the occurrence and the statement, the distance which the declarant traveled from the scene, declarant's condition, and the presence of intervening occurrences. (*People v. Grover* (1983), 116 Ill. App. 3d 116, 451 N.E.2d 587; *People v. Cherry* (1980), 88 Ill. App. 3d 1048, 411 N.E.2d 61.) The fact that the statement has been made in response to a question will not itself deprive an utterance of the spontaneity necessary to establish its admissibility. *People v. Alexander* (1973), 11 Ill. App. 3d 782, 298 N.E.2d 355.

■■■ In the present case, complainant spoke to her mother moments after she had been released by defendant near her home. She went straight home and asked for her mother. Complainant initially was very quiet, then started crying and was not extensively questioned by her mother. We conclude that complainant's out-of-court statements to her mother constituted a spontaneous declaration and were properly admitted as corroborative statements. We reject defendant's claim that complainant had the time or opportunity to fabricate the rape complaint. We likewise reject defendant's argument that complainant's statement was uttered only in response to a series of questions. The key inquiry in deciding whether such a statement should be admitted is whether the statement would have been made if the questions had not been asked. (*People v. Taylor* (1971), 48 Ill. 2d 91, 268 N.E.2d 865.) In view of complainant's physical and emotional condition and the fact that she immediately sought out her mother and started crying, it is clear that complainant would have told her mother about the rape at that moment even without being asked.

■■■ We agree with defendant that Officer Lebak's testimony that complainant stated she had been raped in a garage was not a sponta-

neous declaration, and should not have been admitted into evidence. In so holding, we reject the State's claim that the testimony was admissible as an explanation of subsequent police activity. In order to substantiate the police investigation, it was only necessary to testify to the fact that a conversation took place, not its substance. (*People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364; *cf. People v. Egan* (1978), 65 Ill. App. 3d 501, 382 N.E.2d 477.) Nevertheless, the hearsay testimony was merely cumulative, and its admission would not require reversal (*People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164; *People v. Cihlar* (1982), 106 Ill. App. 3d 824, 436 N.E.2d 1041), even if the issue had not been waived for lack of objection.

Defendant further contends that he was not proved guilty of rape, deviate sexual assault and aggravated kidnaping beyond a reasonable doubt. We shall treat the issue as to rape and deviate sexual assault together.

In such cases, the State is required to prove beyond a reasonable doubt that the accused had sexual intercourse with the complainant or compelled the victim to perform or submit to an act of deviate sexual assault. (Ill. Rev. Stat. 1981, ch. 38, pars. 11—1(a), 11—3.) Where a complainant's testimony is clear and convincing, that testimony is sufficient to support a conviction without the necessity of corroborative evidence. (*People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 285.) The credibility of complainant is an issue best determined by the trier of fact, who heard the testimony and observed the demeanor of the witnesses. (*People v. Sanchez* (1982), 110 Ill. App. 3d 893, 443 N.E.2d 252.) A court of review will not set aside the finding of the trier of fact unless it is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. *People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.

The complainant's testimony was clear and convincing and sufficiently corroborated by the other testimonial and physical evidence. Complainant related how defendant abducted her from her home, drove her to a deserted garage, repeatedly threatened her with physical abuse, and forced her to submit to sexual intercourse and to perform deviate sexual acts. Complainant promptly reported the incident. Additionally, the evidence of fibers from two carpet pieces in the garage found in her pubic hairs and clothing and the sperm stain on her jeans corroborated complainant's testimony. Considering all the evidence, the jury was entitled to believe complainant's testimony and to disbelieve the consent defense provided by defendant. There was also sufficient evidence to demonstrate defendant's use of force and complainant's resistance. Complainant testified that defendant threat-

ened to "bury her where she stood" if she tried to escape. He clutched her by the arm and hair to prevent her escape. Once inside the garage, complainant refused to undress and defendant removed her clothing as he held onto her arm. Complainant's testimony is substantiated by the medical evidence showing a bruise on her breast and three bruises on her arm in a "line-like configuration." Nor was complainant's failure to make an outcry or attempt to escape demonstrative of lack of resistance. There was sufficient evidence of defendant's use of force and threats as well as complainant's fear of resistance to support the jury's determination of guilt. *People v. Sanchez* (1982), 110 Ill. App. 3d 893, 443 N.E.2d 252.)

To convict defendant of aggravated kidnaping, the jury must find that defendant, by force or threat of force, carried the victim from one place to another with intent to secretly confine the victim against her will, and that defendant committed a felony on the victim. (Ill. Rev. Stat. 1983, ch. 38, pars. 10—1(a), 10—2(a)(3).) Complainant's testimony, the testimony of the other witnesses, and the physical evidence support the finding that complaint was forcibly transported to the garage, secretly confined there and raped. The jury correctly found defendant guilty of aggravated kidnaping. He was proved guilty of all three offenses beyond a reasonable doubt.

Defendant next contends that he was improperly sentenced because the new criminal sexual assault law (Ill. Rev. Stat., 1984 Supp., ch. 38, pars. 12—12 to 12—18) reduces his rape and deviate sexual assault offenses from two Class X felonies to one Class 1 felony. Defendant was convicted of two Class X felonies, rape and deviate sexual assault under the Criminal Code of 1961. Effective July 1, 1984, the same criminal conduct is prohibited by section 12—13, which classifies criminal sexual assault as a Class 1 felony. Ill. Rev. Stat., 1984 Supp., ch 38, par. 12—13(b).

In *People v. Bradford* (1985), 106 Ill. 2d 492, 478 N.E.2d 1341, the court concluded that a defendant found guilty and sentenced prior to the effective date of the new sex crimes act, July 1, 1984, is not eligible to be sentenced under the new provisions even though his case was on appeal when the act became effective. Here, the offenses were committed on April 17, 1982. He was found guilty on November 10, 1983, and was sentenced on February 3, 1984. Consequently, defendant was properly sentenced under the provisions of the old act.

Finally, defendant contends that the concurrent sentences of 12 years for rape, deviate sexual assault and aggravated kidnaping were excessive. He argues that the trial court failed to properly consider certain mitigating factors such as his harsh childhood, history of

psychiatric problems and drug abuse, and only one prior conviction. The record reveals, however, that the trial court considered appropriate factors in sentencing defendant, including his social history, psychiatric and drug problems, and lack of significant criminal background, as well as the seriousness of the offenses. We find no abuse of discretion in the trial court's imposition of concurrent 12-year terms. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and RIZZI, J., concur.